608 A.2d 1291

**Wayne Sylvester HEBRON**

v.

**STATE of Maryland.**

**No. 1630, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

July 8, 1992.

Gina M. Serra, Asst. Public Defender, argued (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra Deshields–Minnis, Asst. Atty. Gen., Baltimore, argued (J. Joseph Curran, Jr., Atty. Gen., M. Jennifer Landis, Asst. Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before WILNER, C.J., and CATHELL and DAVIS, JJ.

WILNER, Chief Judge.

A jury in the Circuit Court for Montgomery County convicted appellant of breaking and entering a dwelling

house, attempted breaking and entering a dwelling house, and malicious destruction of property.

These convictions stemmed from an incident that occurred on May 21, 1991 at the home of Dr. Hilary Weiner, located in the Tanglewood development. When she left in the morning to go to work, Dr. Weiner secured the house, presumably meaning that she closed and locked the front door. When she returned later in the afternoon, she found the door frame "splintered" and "broken apart." As a result, "you could just push the door open and could not secure the door afterwards." Evidence from a neighbor established that, about 11:00 that morning, appellant, driving a gray car with what turned out to be stolen plates, parked near Dr. Weiner's home and proceeded to walk between two buildings in the direction of the home. The neighbor lost sight of him but shortly heard "a loud, really loud, bang noise. Not a pop bang, but a bash bang." About 20 seconds later, she saw appellant emerge from between the two buildings, get into his car, and drive away.

Appellant makes three complaints in this appeal: that the court erred in refusing to give a jury instruction concerning circumstantial evidence, that the evidence was legally insufficient to sustain his conviction for breaking and entering, and that the court erred in allowing evidence of other crimes. We shall deal with these complaints in a somewhat different order, but finding no merit in any of them, we shall affirm.

## Sufficiency of Evidence

Appellant's argument as to evidentiary sufficiency goes only to the conviction for breaking and entering and indeed only to the question of whether the State adequately proved an entry into Dr. Weiner's home. He does not contest that the evidence sufficed to show a breaking.

It is true, as he posits, that no one saw him enter Dr. Weiner's home; nor was anything taken from the house. The only evidence indicating an entry came from the condi-

tion of the door frame and the fact that, when she returned home, Dr. Weiner found her cats "spooked."

■ Although there are many cases in which the Maryland courts have discussed and defined what constitutes a "breaking" for purpose of our various burglary and trespass statutes, we seem not yet to have addressed the requisites of an entry. The law on that elsewhere, stemming from the English common law, is well established, however. Wharton states the law this way:

"There is an entry when any part of the defendant's person passes the line of the threshold.

Thus, there is an entry when the defendant, after opening a closed door, steps across the threshold; when, after breaking the glass of a door or window, he reaches inside to unlock the door or window or to steal property; when, in the course of breaking the glass of a door or window, his finger, hand, or foot happens to pass through the opening; *or when, in the course of pushing open a closed door or raising a closed window, his finger or hand happens to pass the line of the threshold.*"

(Emphasis added). 3 *Wharton's Criminal Law*, 14th Ed., § 332. *See* also LaFave and Scott, *Criminal Law*, p. 710; R. Perkins, *Criminal Law*, pp. 155–56; Clark and Marshall, *A Treatise on the Law of Crimes*, 7th ed., § 13.04. We see no reason not to adopt that view.

■ Apart from the splintering of the door frame, Dr. Weiner stated that she observed splintered wood on a mat inside the house. Officer Hall also noticed splinters or chips on the inside floor. That evidence, coupled with the loud bang heard by the neighbor and the fact that the frame was so damaged as to make it impossible to close and latch the door, could lead a rational trier of fact reasonably to find that appellant used his body to batter the door with such force as to defeat the lock and open the door. From that, the trier of fact could further reasonably infer that, with the application of that kind of body pressure to the door, some part of appellant's body must necessarily have

crossed the threshold when the door opened. We therefore conclude that the evidence was sufficient to sustain the charge.

### Jury Instruction

The court instructed the jury that the State had the burden of proving appellant's guilt beyond a reasonable doubt and it defined the concept of reasonable doubt. In the course of those instructions, it told the jury:

> "There are two types of evidence: direct and circumstantial. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. No greater degree of certainty is required of circumstantial evidence than of direct evidence. In reaching your verdict, you should weigh all the evidence presented, whether it be direct or circumstantial."

No objection was made to any of the court's instructions. When the court was finished, however, defense counsel, asserting that the case was based solely on circumstantial evidence and that the evidence must therefore preclude all reasonable inferences of innocence, asked for an additional instruction that "if you [i.e., the jury] can draw more than one reasonable inference from the circumstantial evidence, then [appellant] must be found not guilty." The court declined to give that additional instruction but permitted counsel to argue the point to the jury, which he proceeded to do.

Relying principally on *West v. State*, 312 Md. 197, 539 A.2d 231 (1988), appellant claims that the refusal to give that additional instruction constitutes reversible error. We do not agree.

The principle at issue is a simple one. As stated in *Wilson v. State*, 319 Md. 530, 536–37, 573 A.2d 831 (1990):

> "A conviction may rest on circumstantial evidence alone.... To ensure that the trier of fact bases a finding of guilt on the appropriate degree of certainty, we have long held that a conviction upon circumstantial evidence

*alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence."

The validity of that principle is not in question; at issue is whether it is the proper subject of a jury instruction.

There was a time when an instruction of that kind was routinely given, even when the evidence was not entirely circumstantial. The instruction was based on the notion that circumstantial evidence was of a lesser quality than direct evidence—that it was inherently less persuasive and that the jury should be so informed. Wigmore contested that view as did the great Judge Learned Hand. *See United States v. Becker*, 62 F.2d 1007, 1010 (2d Cir.1933). It was not until 1954, however, that the underpinning of the instruction was authoritatively debunked and the practice of giving it sharply curtailed. In *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), a criminal tax evasion case based on net worth evidence, the defendant complained of the trial judge's refusal to instruct the jury that where the evidence is circumstantial, "it must be such as to exclude every reasonable hypothesis other than that of guilt." *Id.* at 139, 75 S.Ct. at 137. The Supreme Court found no error, stating, at 139–40, 75 S.Ct. at 137–38:

"There is some support for this type of instruction in the lower court decisions [citations omitted], but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect. . . .

Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is con-

vinced beyond a reasonable doubt, we can require no more."

*Holland* eliminated the instruction in Federal cases. *See United States v. Stone,* 748 F.2d 361, 362 (6th Cir.1984), *cert. denied,* —— U.S. ——, 111 S.Ct. 71, 112 L.Ed.2d 45 (1990); *Robertson v. United States,* 364 F.2d 702, 703 n. 1 (D.C.Cir.1966); *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728, 736 (1974) and cases cited therein. It also caused many, if not most, of the States to reexamine the instruction and to eliminate or sharply curtail its use. *See* D. Gaffney, *The Circumstantial Evidence Charge in Texas Criminal Cases: A Retrograde Doctrine,* 55 Tex.L.Rev. 1255 (1977), noting, at 1260, that, by 1977, at least 11 States had adopted the new Federal approach. In fact, more than 11 States have abandoned their former practice, based largely on *Holland. See,* by way of example, *State v. Wilkins, supra,* 523 P.2d 728; *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970); *Henry v. State,* 298 A.2d 327 (Del.Supr.1972); *State v. Roddy,* 401 A.2d 23 (R.I.1979); *State v. Jackson,* 331 A.2d 361 (Me.1975); *Hankins v. State,* 646 S.W.2d 191 (Tex.Cr.App.1981); *State v. Derouchie,* 140 Vt. 437, 440 A.2d 146 (1981); *State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680 (1975); *Blakely v. State,* 542 P.2d 857 (Wyo.1975); *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

The situation in Maryland is ambiguous—in part because of the vestige of our quaint Constitutional provision declaring the jury to be the judge of both the law and the facts, in part because, though recognizing generally that circumstantial and direct evidence are of the same quality, we adhere to the notion that a conviction cannot rest on a single strand of circumstantial evidence unless that strand is inconsistent with all reasonable hypotheses of innocence.

The Court of Appeals seems clearly to have adopted the general underlying premise that, in terms of quality, there is no difference between direct and circumstantial evidence. Quoting with approval from *Nichols v. State,* 5 Md.App. 340, 350–51, 247 A.2d 722 (1968), *cert. denied,* 253 Md. 735

(1969), the Court stated in *Gilmore v. State*, 263 Md. 268, 292–93, 283 A.2d 371 (1971), *vacated in part, Gilmore v. Maryland*, 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972):

" 'The law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty is required when the evidence is circumstantial than when it is direct, for in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused....

"[C]ircumstantial evidence need not be such that no possible theory other than guilt can stand.... It is not necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, or produce an absolute certainty in the minds of the jurors." ' "

Judge Moylan recently examined these cases for us in *Eiland v. State*, 92 Md.App. 56, 607 A.2d 42 (1992), concluding, as did the *Wilson* Court, that only in that limited situation "where the State's proof of guilt depends exclusively upon a single strand of circumstantial evidence" must it exclude every reasonable hypothesis of innocence. *Id.*, 92 Md.App. at 69, 607 A.2d 42. Maryland is not unique in carving out that exception. *See Ransonette v. State*, 550 S.W.2d 36, 43 (Tex.Crim.App.1977); *Byrth v. United States*, 327 F.2d 917, 919 (8th Cir.), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1333, 12 L.Ed.2d 295 (1964). In all other cases, it would seem clear that an instruction requiring the exclusion of reasonable hypotheses of innocence is not only unwarranted, but improper. The question is whether it is appropriate, or necessary, upon request, where the State's case depends upon that "single strand of circumstantial evidence."

The *Holland* Court drew no distinction between the "single strand" and multiple strands of circumstantial evidence; nor did it indicate whether it viewed the case before it as resting on a single strand. At least five courts have construed the *Holland* Court's criticism of the instruction as applying even where the evidence *is* entirely circumstan-

tial and at least one of them expressly viewed *Holland* as a case of that type. *Bails v. State,* 92 Nev. 95, 545 P.2d 1155 (1976); *State v. Gosby, supra,* 539 P.2d 680; *Green v. United States,* 251 A.2d 652 (D.C.1969); *State v. Smith,* 37 Conn.Supp. 664, 434 A.2d 368 (Super.Ct.1981); *cf. Jordan v. State,* 481 P.2d 383 (Alaska 1971); *State v. Jenks, supra,* 574 N.E.2d 492. Most of the courts that have followed *Holland* have simply not addressed the question but have used language that, on its face, would apply without regard to the number of strands involved.

We are inclined to the view that the requested instruction ought not to be given even when the case is allegedly in the single strand category. We adopt that view for two reasons.

The *Holland* Court's criticism of the instruction rested on two bases: first, the instruction suggested a distinction as to quality between direct and circumstantial evidence that the Court declared was without foundation; and second, that, when juxtaposed with the controlling reasonable doubt standard, it was likely to be confusing to the jury. To the extent that the case is in the single strand category, the first basis would not apply, for Maryland does draw a distinction between the quality of direct and circumstantial evidence in that one setting. The second basis does have force, however. Assuming *arguendo* that a case based solely on a single strand of circumstantial evidence is properly presentable to the jury in the first instance, which we think is not allowed, an instruction on reasonable doubt is all that is needed. If the jury finds from the evidence a reasonable hypothesis of innocence, it will necessarily entertain a reasonable doubt as to guilt and will be obliged to acquit. A special instruction in that regard focusing on reasonable hypotheses is simply not needed. Agreement on a proper instruction defining the State's burden and the concept of reasonable doubt has proved difficult enough without adding further complexity.

Equally cogent in our view is the fact that, under the language used in *Wilson* and earlier cases, the issue raised

by a case resting entirely on a single strand of circumstantial evidence is not one of reasonable doubt, which is for the jury to determine, but of evidentiary sufficiency, which is for the judge to determine. *Wilson*, it will be recalled, confirmed that a conviction based solely on a single strand of circumstantial evidence "is not to be sustained" unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.

This is, and always has been, a rule relating to evidentiary sufficiency. If the State's case is based *solely* on a single strand of circumstantial evidence and that evidence does not exclude every reasonable hypothesis of innocence, neither the judge nor a jury can lawfully return a verdict of guilty. Where the case is such that a jury cannot lawfully return a verdict of guilty, because the evidence will not support such a verdict, there is nothing for the jury to decide, and, upon proper motion, the judge is duty-bound, as a matter of law, to enter a judgment of acquittal. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

To the extent that there is any ambiguity as to this, it derives from language in cases construing the unique provision added to the Maryland Constitution in 1851, making the jury in criminal cases the judges of the law as well as the facts. Until 1949, that is precisely what the Constitution said: "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact." 1867 Maryland Constitution, art. XV, § 5; 1864 Maryland Constitution, art. XII, § 4; 1851 Maryland Constitution, art. X, § 5. While that provision held full sway, the law was that the judge "cannot, by any instruction given in a criminal case, bind the jury as to the definition of the crime, *or as to the legal effect of the evidence before them.*" (Emphasis added). *Beard v. State,* 71 Md. 275, 280, 17 A. 1044 (1889). The jury, in other words, appeared to be the final arbiter not only of the weight and persuasiveness of the evidence, but also of its "legal effect." In 1950, that was changed. In that year, the voters adopted an amendment proposed by 1949 Md.Laws, ch. 407, adding to what was then art. XV,

§ 5 the proviso that "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." *See also* 1949 Md.Laws, ch. 596, implementing the new provision by statute. As so supplemented, the Constitutional provision now appears as art. 23 of the Maryland Declaration of Rights.

As the Constitution now reads, the legal sufficiency of evidence is not a matter for jury instructions. The judge must decide that issue, for it is an issue of law generally having nothing to do with the law of the crime itself. Unless there is a genuine dispute as to the law of the crime itself, of which there was none here, the jury's function is to determine what the facts are and whether, based on the facts it finds and the law as given to it by the judge, it has a reasonable doubt as to the defendant's guilt. The very submission of those issues, however, necessarily presupposes a binding determination by the judge that the evidence is legally sufficient to permit the jury to render a verdict of guilty if it is disposed to do so. The jury cannot be permitted to ponder guilt when there is no legal basis for a finding of guilt.[1]

---

**1.** Apart from the 1950 addition, the Court of Appeals in more recent times has severely circumscribed the jury's role as judges of the law. In *Stevenson v. State,* 289 Md. 167, 179, 423 A.2d 558 (1980), the Court observed: "In fact, viewed affirmatively, the past decisions of this Court make it quite evident that the jury's role in judging the law under Article 23 is confined 'to *resolv[ing] conflicting interpretations of the law [of the crime]* and to decid[ing] whether th[at] law should be applied in dubious factual situations,' *and nothing more,"* citing *Dillon v. State,* 277 Md. 571, 581, 357 A.2d 360 (1976).

Unfortunately, the *Stevenson* Court, in a subsequent passage, resurrected an ambiguity that we are unable to explain. 289 Md. at 179–80, 423 A.2d 558, it said:

"Implicit in the decisions of this Court limiting the jury's judicial role to the 'law of the crime' is a recognition that *all other legal issues* are for the judge alone to decide. Because of this division of the law-judging function between judge and jury, it is incumbent upon a trial judge to carefully delineate for the jury the following dichotomy: (i) that the jury, under Article 23, is the final arbiter of disputes as to the substantive 'law of the crime,' *as well as the 'legal effect of the evidence,'* and that any comments by the judge concerning these matters are advisory only...."

Accordingly, for these reasons, we conclude that, where the defendant posits that the State's evidence consists of a single strand of circumstantial evidence that is not inconsistent with a reasonable hypothesis of innocence, he is effectively charging that the evidence is legally insufficient. If that claim is made timely and properly, it is incumbent upon the judge to rule upon it as a matter of law, in the context of a motion for judgment of acquittal. If the motion is granted, of course, the count(s) to which it applies

(Emphasis added).

The only reference given in the Opinion with respect to the phrase "legal effect of the evidence" is *Beard v. State, supra,* 71 Md. 275, 17 A. 1044, and that phrase was not explained, or even discussed, in *Beard.* The phrase appears in a number of Maryland cases dating back at least as far as *Wheeler v. State,* 42 Md. 563 (1875), and it is abundantly clear from them that the term "legal effect" was regarded as synonymous with "legal sufficiency." In *Deibert v. State,* 150 Md. 687, 695, 133 A. 847 (1926), the Court held flatly:

"Nor can the legal sufficiency of the testimony to sustain the indictment be submitted to the trial court as a question of law, as under the constitution of Maryland the jury, in criminal cases, is the judge of both the law *and the legal effect and legal sufficiency of the evidence,* whose admissibility alone is for the trial court." (Emphasis added). Indeed, even the Court of Appeals was powerless to set aside a guilty verdict on the ground of evidentiary insufficiency, that being exclusively a jury determination. *Willie v. State,* 153 Md. 613, 139 A. 289 (1927). As explained in *Slansky v. State,* 192 Md. 94, 108, 63 A.2d 599 (1949), the only option available when, despite the judge's advisory instruction that the evidence was legally insufficient, the jury nevertheless convicted, was for the trial court to "remedy the error by setting aside the verdict and granting a new trial."

The apparent purpose and decided effect of the 1950 amendment was to permit the court to *direct,* not merely advise, a verdict for the defendant, upon proper motion, when the evidence is legally insufficient. *Woodell v. State,* 223 Md. 89, 93, 162 A.2d 468 (1960). With respect, we must wonder whether the *Stevenson* Court, which never mentioned the 1950 amendment, truly intended to perpetuate, or reinstitute, the notion that a judge is obliged to send to the jury a case where the judge concludes that the evidence of guilt is legally insufficient and await a motion for new trial in the event the jury convicts. It would seem from *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981), that it did not intend such a result, for there, at 89, 437 A.2d 654, the Court made clear that article 23 and the implementing Rule were "limited to those instances when the jury is the final arbiter of the law of the crime. Such instances arise when an instruction culminates in a dispute as to the proper interpretation of the law of the crime for which there is a *sound basis.*"

may not be submitted to the jury. If the motion is denied, the court must instruct on reasonable doubt, but should not supplement that instruction with any special focus on hypotheses arising from circumstantial evidence. The court's denial of the requested instruction was therefore not error.

### *Other Crimes Evidence*

Appellant's last complaint concerns testimony linking him to an attempted breaking in Laurel on the same day as the instant offense and testimony relating to the theft of the license plate that a neighbor of Dr. Weiner observed on the car appellant drove into the Tanglewood development. The short, and decisive, answer to this complaint is that it was not preserved for appellate review. Much of the evidence regarding these incidents came in without objection.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.